No. 40,556

EVERETT WESLEY DAVIS, *Appellant*, v. ARDEN RHYNE, Sheriff, Leavenworth County, Kansas; and ARTHUR HOFFMAN, Warden, Kansas State Penitentiary, Lansing, Kansas, *Appellees.*

(312 P. 2d 626)

444

Opinion filed June 8, 1957.

*Everett Wesley Davis,* pro se.

*Fred N. Six,* Assistant Attorney General, of Topeka, argued the cause and *John Anderson, Jr.,* Attorney General, of Topeka, was with him on the briefs for the respondents.

The opinion of the court was delivered by

HALL, J.: This is an appeal from an order and judgment of the district court of Leavenworth County denying petitioner's application for a writ of habeas corpus.

Petitioner was originally charged in Russell County, Kansas, with the crime of forgery in the second degree. He was represented by court appointed counsel and pled guilty to the charge. He was subsequently sentenced to the Kansas State Penitentiary for a period of not more than 10 years for the crime of forgery in the second degree as defined by G. S. 1949, 21-608. Petitioner was sentenced on October 6, 1952, and served a year of time in the state penitentiary. On the 6th day of October, 1953, he was granted a parole by the Board of Penal Institutions. On April 21, 1954, he became a parole delinquent by reason of leaving his place of residence and employment without permission, whereupon the Warden of the penitentiary issued an order for his arrest.

Petitioner left the State of Kansas, went to Colorado, and later to Wyoming where he was convicted and sentenced to the United States Penitentiary at Leavenworth, Kansas, for violation of a federal statute. Upon his release from the United States Penitentiary at Leavenworth, petitioner was arrested by appellee, the Sheriff of

Leavenworth County, Kansas, by authority of the Kansas State Penitentiary parole violation warrant and has been and is now in the custody of the appellee.

Petitioner made application for a writ of habeas corpus in the district court of Leavenworth County which was denied on the 17th day of September, 1956. Hence this appeal.

Petitioner contends that the failure of the State of Kansas to extradite or return petitioner from the asylum states of Colorado and Wyoming constituted a waiver of jurisdiction over him as a parole violator and also that his rights under article IV, section 2 of the United States Constitution have been violated.

Petitioner's principal complaint is that the State of Kansas knew his whereabouts at all times and did nothing to enforce its warrant for parole violation until after petitioner was apprehended for the federal offense and that such failure by the State of Kansas waived and relinquished any and all rights it had to the petitioner. For the same reason he contends the State of Kansas violated article IV, section 2 of the United States Constitution because he was a "fugitive from justice" and the state did not extradite him.

In substantiation of these claims, petitioner includes in his brief a series of letters addressed to him from the record clerk of the Kansas Penitentiary and the pardon attorney dated in October and November of 1954, some six months after the revocation of his parole.

There is a line of cases which hold that a state which honors the requisition of another state for a prisoner in its custody for an offense waives its jurisdiction over him and thereby also waives its subsequent right to punish him for past delinquencies or to extradite him for that purpose. However, this is not the rule of the great weight of authority. The theory is that such surrender operates as a waiver of the jurisdiction of the state over the person of the prisoner and that he cannot thereafter be considered a fugitive from justice from the surrendering state. (35 C. J. S. Extradition § 21b; *In re Whittington*, 34 Cal. App. 344, 167 Pac. 404; *The People v. Bartley*, 383 Ill. 437, 50 N. E. 2d 517, 147 A. L. R. 935; *In re Colin*, 337 Mich. 491, 60 N. W. 2d 431.)

Petitioner cites and relies on one authority, *In re Hess*, 5 Kan. App. 763, 48 Pac. 596. This case is sometimes cited in support of the above minority rule on waiver. See *In re Whittington*, supra, where the court said:

". . . Not only may it be said that he is not a fugitive because he did not voluntarily leave that state, but because also the state of Texas voluntarily relinquished the jurisdiction of its courts over his person and waived its right to thereafter have him brought back from the California jurisdiction to answer for the same offense. In an argumentative way the case of *In re Hess* (*Hess v. Grimes*), 5 Kan. App. 763, (48 Pac. 596), is authority for the conclusion last announced." (p. 347.)

The Hess case involved two defendants who were surrendered to the Kansas authorities by the State of Oklahoma. They were charged for having committed an offense against both the Oklahoma Territory and the State of Kansas. The Governor of Oklahoma turned the defendants over to Kansas. At the time of appeal the defendants were in the legal custody of Kansas but contended that Oklahoma had jurisdiction over them. The court held that Oklahoma had waived its jurisdiction.

The facts of the Hess case are clearly distinguishable from the case at bar and it has no factual application to petitioner's contention on this appeal.

As a matter of law, the Hess case has never been persuasive with this court. Although it was cited in the leading case of *In re Whittington,* supra, this court said in *In re Martin,* 142 Kan. 907, 52 P. 2d 1196:

". . . The Kansas case cited in that opinion (the Hess case) has little, if any, application to the case before us.

"The Whittington case, although frequently cited, has rarely, if ever, been followed. (p. 910.)

. . . . . . . . . . . . .

"We are not disposed to follow the reasoning and holding of *In re Whittington,* supra. It is against the great weight of authority. . . ." (p. 912.)

The court cited *People v. Mallon,* 218 N. Y. S. 432, as illustrative of the weight of authority.

"The only case cited which holds differently from these cited hereinbefore is *In re Whittington,* 34 Cal. App. 344, 167 P. 404, which held the question of whether the accused had left the demanding state of his own volition, or under compulsion of legal process, could be inquired into. This holding is opposed to the uniform current of the decisions of the United States Supreme Court, which hold that there can be no inquiry into the motives which caused an alleged fugitive to depart from one state and take refuge in another; there is no discretion allowed, no inquiry into motives. *Drew v. Thaw,* 235 U. S. 432, 35 S. Ct. 137, 59 L. Ed. 302." (p. 441.)

The Kansas cases follow the weight of authority. The rule is stated in 35 C. J. S. Extradition § 10b(2).

"An indicted or convicted prisoner who escapes may be extradited as a fugitive from justice; and the same is true as to a paroled prisoner who violates his parole or whose parole has been revoked. This rule applies notwithstanding the paroled prisoner's entry into the asylum state, prior to the violation or revocation of his parole, was with the consent or knowledge of the authorities of the demanding state, and irrespective of whether his departure from the demanding state or his entry into the asylum state was voluntary or involuntary."

See, also, 42 A. L. R. 585; 78 A. L. R. 420; 93 A. L. R. 931; and 147 A. L. R. 941.

For Kansas cases see *In re Martin,* supra; and *Ohrazada v. Turner,* 164 Kan. 581, Syl. 1 & 2, 190 P. 2d 413, where the court said:

"When a prisoner has not fully served a state sentence and is merely at liberty on parole he is constructively a prisoner of that state and in the legal custody of the duly authorized officials.

"If the prisoner departs from a state while on parole from its penal institution and that state seeks his return from another state for a violation of his parole, the cause of his leaving or the manner in which he left are immaterial if he did not leave under circumstances which deprive the demanding state of further right to custody."

And in *Thompson v. Nye,* 174 Kan. 750, Syl. 2, 257 P. 2d 937:

"Although there are authorities to the contrary, the general rule is where one commits an offense in the demanding state and thereafter goes or is taken into another or asylum state, his motives in leaving or the reasons why he has left the demanding state are immaterial. (Following *In re Martin,* 142 Kan. 907, 52 P. 2d 1196.)"

And in *Holden v. Hudspeth,* 168 Kan. 194, 211 P. 2d 64; and *Young v. Edmondson,* 177 Kan. 582, 280 P. 2d 571.

The above authorities have been cited in answer to petitioner's contention that the State of Kansas waived or relinquished its right to extradite him because of its alleged failure to enforce its warrant for parole violation whereby his constitutional rights were violated.

Under the facts of this case, we really need not be concerned with the problems of extradition under article IV, section 2 of the United States Constitution. The petitioner was returned to Kansas by federal authorities and incarcerated in the federal penitentiary at Leavenworth, Kansas. Upon release from that prison he was immediately arrested by Kansas, the demanding state, not through extradition but through the rule of comity between the states and the federal authorities. 35 C. J. S. Extradition § 2:

"No question of extradition is involved where a prisoner in the custody of the United States government is turned over to a state for prosecution."

And in 25 Am. Jur., Habeas Corpus, § 71:

". . . But the question whether he was a fugitive from justice may not be raised by the accused after he has been delivered into the jurisdiction of the demanding state and is held by valid process therein."

And in *Pettibone v. Nichols,* 203 U. S. 192, 51 L. ed. 148, 27 S. Ct. 111, 51 A. L. R. 803, it was held that while a person being extradited has a right to have the question of the validity of his extradition (as to whether he was a fugitive from justice or not) determined by a court, state or Federal, and, if found invalid, to be discharged from custody, he cannot secure his discharge upon this ground after he has been returned to the demanding state.

Under the practice of comity a prisoner on parole from a state prison who is subsequently placed on parole from a federal penitentiary is constructively a prisoner of the state, subject only to such rights as the federal authorities may assert in conforming with the rule of comity existing between the federal and state sovereignties. Where a person has violated the laws of two different sovereignties, it is up to the interested sovereignties and not the criminal, to settle which is to inflict the punishment, and by the same token, where a prisoner is on parole from two sovereignties, it is for the latter, and not the prisoner, to determine priority of jurisdiction over him in connection with paroles. The question of priority of jurisdiction is one of comity between the respective sovereignties and not one of personal right of the prisoner. (*United States v. Marrin,* 227 Fed. 314; *United States v. Farrell,* 87 F. 2d 957; *In Re Silverstein,* 52 C. A. (2d) 725, 126 P. 2d 962; and *Rosenthal v. Hunter,* 164 F. 2d 949.)

The Kansas cases on this point are in line with the federal cases. A leading case is *Perry v. Gwartney,* 162 Kan. 607, 178 P. 2d 185, where the court held that as between the state and Federal governments the question of which should have the custody of the defendant was one of comity between the two governments and not a personal right of the prisoner and could not be raised by him. The court quoted the following from *Wall v. Hudspeth,* 108 F. 2d 865:

" 'When the court of one sovereign takes a person into its custody on a criminal charge he remains in the jurisdiction of that sovereign until it has been exhausted, to the exclusion of the courts of the other sovereign. That rule rests upon principles of comity, and it exists between federal and state courts. *Ponzi v. Fessenden,* 258 U. S. 254, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879; *Grant v. Guernsey,* 10 Cir., 63 F. 2d 163, certiorari denied

289 U. S. 744, 53 S. Ct. 688, 77 L. Ed. 1491. But either the federal or a state government may voluntarily surrender its prisoner to the other without the consent of the prisoner, and in such circumstances the question of jurisdiction and custody is purely one of comity between the two sovereigns, not a personal right of the prisoner which he can assert in a proceeding of this kind. *Ponzi v. Fessenden*, supra; *In re Andrews*, D. C., 236 F. 300.' "

See, also, *In re Martin*, supra; *Hostetler v. Hudspeth*, 163 Kan. 647, 184 P. 2d 994; *Ohrazada v. Turner*, supra; *Powell v. Turner*, 167 Kan. 524, 207 P. 2d 492; *Holden v. Hudspeth*, supra; *Foster v. Hudspeth*, 170 Kan. 338, 224 P. 2d 987; *Hanson v. Nye*, 176 Kan. 373, 270 P. 2d 790.

In a recent case, *Young v. Edmondson*, 177 Kan. 582, 280 P. 2d 571, which factually is very similar to the case at bar, this court said:

". . . It is a well-established rule of law that the right of priority to an accused is a matter of concern to the courts involved, it being for them, not the accused, to decide which shall try or inflict punishment upon him first. The right of priority may be waived or surrendered. Thus, one accused of an offense against both Federal and State laws or against the laws of two separate States may be subjected to trial in the courts of one of these sovereignties when the one which first had custody of his person turns him over for such purpose, accused having no right to complain of the jurisdiction thereby conferred. . . ." (p. 584.)

In habeas corpus proceedings, the burden is upon petitioner to prove the grounds on which he relies for his release. The court said in *Engling v. Edmondson*, 175 Kan. 883, 267 P. 2d 487:

"The burden is upon petitioner to prove the grounds upon which he relies for his release. . . . The unsupported statements of a petitioner in a habeas corpus proceeding do not meet the requirements of proof. Records of courts are not set aside upon the unsupported statements of a defeated litigant. And neither is a proceeding in habeas corpus a substitute for appeal. . . ." (p. 885.)

The district court of Leavenworth County found that petitioner had failed to meet this burden. After a very careful examination of petitioner's contentions on this appeal we must agree with the district court. The record presents no grounds for his release.

The judgment is affirmed.